UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CREATIVE COMPOUNDS, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:10CV000025 SNLJ |
| LOTT & FRIEDLAND, P.A., | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss or transfer based on improper venue (#6), filed February 11, 2010. Responsive pleadings have been filed and this matter is ripe for disposition.

**I. Statement of the Case**

Plaintiff Creative Compounds, LLC (Creative) filed its original petition in the Circuit Court of Scott County, in Missouri state court, alleging that defendant Lott & Friedland, P. A. (L & F) acted negligently and breached its fiduciary duties by failing to timely file a patent application for Creative's shaker cup invention. L & F, a law firm incorporated in the State of Florida, removed this action to this Court on February 4, 2010, under diversity jurisdiction, and now seeks to dismiss this action for lack of personal jurisdiction, or in the alternative, transfer the case to the Southern District of Florida.

L & F maintains one office in Coral Gables, Florida, and none of its members are licensed to practice law in Missouri. L & F does not have an agent, real estate, bank account, or personal property in Missouri, nor does it advertise or solicit business in Missouri beyond the maintenance

1

of a website.

Plaintiff's corporate counsel solicited the service of L & F in May of 2007 to represent Creative regarding a patent application for a shaker cup invention, and the one and only in-person meeting between the parties occurred at the office of plaintiff's corporate counsel in Miami, Florida on May 7. Though L & F represented Creative, L & F's contacts on the instant case were limited to exchanges of telephone calls, e-mails, and other correspondence, and L & F performed all of its work regarding the shaker cup in Florida. L & F filed no pleadings with Missouri courts and never traveled to the state.

However, in September of 2007, Creative also hired L & F to defend Creative in a patent infringement case pending in this Court, *Molecular Nutrition, LLC, et al. v. Syntrax Innovations, Inc., et al.*, 1:06CV13 HEA. Two of L & F's shareholder attorneys entered their appearances before this Court, pro hac vice, on behalf of Creative and they represented Creative and its co-defendants in that case for four months and billed over $22,000 in professional fees for that lawsuit alone before withdrawing their appearance.

In any event, it is undisputed that at the earlier May 2007 meeting, L & F's attorneys held the firm out to specialize in intellectual property matters and proposed that it represent Creative on all legal matters related to intellectual property. It was known to both parties at that time that Creative's patent-related legal needs included both prosecution of its own patent applications and defense of patent infringement claims made against Creative by others. Creative engaged L & F to represent it in all of its then pending patent-related matters, which L & F did for approximately the next 10 months. The representation only ended when the parties had disputes over L & F's billing practices.

L & F's representation of Creative in the patent infringement case and the malpractice claim against L & F in this case for failure to timely file a patent application arose out of L & F's continuous (albeit temporally limited) representation of Creative in patent-related matters. Although L & F allocated fees to individually named matters, it billed Creative for all of the matters with a consolidated billing statement every month. Furthermore, L & F did not send Creative separate engagement letters for each of the 19 individual matters, but instead sent out two generic engagement letters, neither of which even attempted to define the scope of L & F's representation of Creative.

**II. Discussion**

Defendant argues that this action should be dismissed for lack of personal jurisdiction, or in the alternative that this Court should transfer the action to the Southern District of Florida. A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). Missouri's long-arm statute, Section 506.500, RSMo 2004, has long been interpreted to authorize the exercise of jurisdiction over non-residents to the extent permissible under the Due Process Clause. *State ex rel. Metal Service Center of Georgia, Inc. v. Wiesman*, 627 S.W.2d 874, 876 (Mo. 1982) (en banc); *see Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000) (citing *Wiesman*), *cert. denied sub nom Industrivarden Serv. AB v. Clune*, 533 U.S. 929 (2001).

The Due Process Clause requires minimum contacts between a non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Dever*, 380 F.3d at 1073. The Supreme Court has set forth two theories

for evaluating minimum contacts, general jurisdiction and specific jurisdiction, and defendant L & F alleges that they have no contacts with Missouri that would establish either form of jurisdiction. Plaintiff does not address defendant's assertion that this Court lacks general jurisdiction and thus the discussion will be limited to specific jurisdiction.

Specific jurisdiction arises if defendant "purposefully directed" its activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see also Lakin v. Prudential Secs.*, 348 F.3d 704, 707 (8th Cir. 2003). The contacts of the forum state are sufficient if the nonresident defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Eighth Circuit examines five factors in determining whether a defendant's contacts support the exercise of personal jurisdiction; (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action with the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Dever*, 380 F.3d at 1073-74. The Court gives significant weight, however, to the first three factors. *Id*.

L & F argues that Eighth Circuit precedent clearly establishes that the first three factors would not connote personal jurisdiction over the defendant under the circumstances of this action. L & F principally relies on *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 227 (8th Cir. 1987), in which a South Dakota corporation filed a legal malpractice action in South Dakota against a New York law firm regarding the firm's representation of the corporation in certain Maryland patent litigation. The law firm moved to dismiss for lack of personal jurisdiction on minimum

4

contacts grounds because the law firm's only physical contact with South Dakota involved one three-day visit to South Dakota by an associate and law clerk to review and inspect documents. The Eighth Circuit held that those three visits, along with numerous phone calls, courier services, and billings between the law firm and business were not sufficient contacts for personal jurisdiction, because (1) the law firm did not maintain an office in South Dakota, (2) none of its attorneys resided there or maintained a license to practice law there, (3) the law firm never advertised or solicited business in South Dakota, and (4) the actions giving rise to the lawsuit – the commencement of a suit on behalf of the company in a federal district court – took place in Maryland, not in South Dakota. *Id.* at 226.

L & F also cites *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087 (8th Cir. 2008), for the proposition that plaintiff may not bootstrap a defendant's other in-state contacts that are unrelated to the cause of action at hand in order to meet the minimum contacts requirement. In *Miller*, plaintiff, an Arkansas resident, brought suit in Arkansas against a Japanese company for wrongful death arising from an accident that occurred in Tennessee.  The decedent was killed while attempting to unload a shipment of electrodes that was en route to a business in Arkansas that had purchased the electrodes from the defendant, but the packaging and shipping of the electrodes had been delegated by the defendant to a subcontractor.  In addressing the critical issue of the relation of the cause of action with defendant's contacts with the forum state, the court held that,

> . . .although [defendant] sold electrodes to an Arkansas corporation pursuant to a sales contract, and [defendant's] representatives visited Arkansas once or twice per year, these contacts do not sufficiently, for due process purposes, relate to the packing, shipping and unloading of the electrodes, the events which allegedly gave rise to Miller's cause of action, and do not permit the

5

exercise of personal jurisdiction over [defendant] in this case.

*Id.* at 1092.

In contrast to *Austad* and *Miller*, however, defendant L & F's connections with the forum state, here, are much more substantial, at least when L & F's representation of Creative in the patent infringement case is considered. Although L & F claims that its representation in the patent infringement was negligible or nominal, it does not dispute that lawyers for the firm were attorneys of record for four months and that they performed enough legal work in the case to rack up some $22,000 in fees. Certainly there would be no doubt that had Creative sued L & F for malpractice in the defense of the patent infringement case, L & F would be held to have minimum contacts within the state to satisfy personal jurisdiction for that purpose. On the other hand, in the absence of L & F's representation of Creative in the patent infringement case, Creative certainly would be unable to meet the minimum contacts test. And so the more precise question presented under a *Miller* analysis is whether L & F's representation of Creative in the patent infringement case was sufficiently related to its representation of Creative in seeking patent protection so that the contacts established in the patent infringement case can indeed properly be bootstrapped to L & F's representation of Creative altogether.

Although it is a close call, it the Court's opinion that the representation was all related and that the bootstrap is now warranted. The record is clear that L & F was representing Creative simultaneously and continuously on the patent infringement case and the patent application request, as well as several other matters, all of which were billed together. And even though the patent infringement case and the patent application request involved separate legal matters, they

were both a part of the parties' overall understanding that L & F would represent Creative on all of its patent law needs, both in and out of the courtroom and both in and out of Missouri. And in fact, that is what occurred. Considering the nature, the quality, the quantity, and the interrelatedness of L & F's contacts with Creative in Missouri, personal jurisdiction over L & F has been established. Under these circumstances, L & F cannot be held to complain that it could not have "reasonably anticipate[d] being haled into court" in Missouri.

For these reasons, L & F's motion to dismiss or transfer for lack of personal jurisdiction is denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss or transfer based on improper venue (#6) is **DENIED**.

Dated this   7th   day of May, 2010.

_____
UNITED STATES DISTRICT JUDGE