UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:11-21879-CIV-MGC/Torres

CREATIVE COMPOUNDS, LLC,

      Plaintiff,

v.

LOTT & FRIEDLAND, P.A.,

      Defendant.

_____/

**DEFENDANT LOTT & FRIEDLAND, P.A'S STATEMENT OF UNDISPUTED
MATERIAL FACTS WITH RESPECT TO ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(a) of the United States District Court for the Southern District of Florida, Defendant Lott & Friedland, P.A. ("L&F") submits the following Statement of Material Facts as to which there is no genuine issue in dispute:

1.      Plaintiff Creative Compounds, LLC, ("Creative"), is a Nevada limited liability company, with its principal place of business in Missouri.  Petition for Damages ("Petition") [DE 1-1], ¶ 1.  Creative is in the sports nutrition, food and dietary supplement business. [DE 1-1], ¶ 11.

2.      Defendant L&F was at all material times a law firm in Florida. [DE 1-1], ¶¶ 2, 9-10.

3.      In or around May 2007, Creative retained to L&F to act as its counsel in connection with patent and Intellectual Property issues. [DE 1-1], ¶ 12.  Prior to retaining L&F, the firm of Adorno & Yoss, LLP ("Adorno") handled Creative's Intellectual Property issues. [DE 87], p. 2.  When Creative retained L&F to represent it, it was in part to assist with filing patent applications that had allegedly been neglected by Adorno and to assist in assessing the possibility of maintaining a legal malpractice action against Adorno.  *Id.*

4.      During their initial meetings with Gary Haynes, Creative's president, and Derek Cornelius, Creative's so-called consultant, Haynes and Cornelius complained that Adorno had missed the filing date for a number of applications by not filing the applications within one year of the first sale date.  Derek Cornelius Deposition, October 14, 2013 ("Cornelius Depo"), at

134:3-135:1 (Exhibit A, including relevant deposition exhibits); Gary Haynes Deposition, January 13, 2014 ("Haynes Depo"), at 63:18-64:1 (Exhibit B).

5.      On June 1, 2007, Michael Keller, Esq., lead counsel at L&F representing Creative, sent Haynes and Cornelius an email discussing the alleged delayed filings by Adorno stating:

> On the patent side it is imperative we file on any invention that is not clearly barred by a public use or sale in the past year. … Time works against you here. … **_Remember you have one year from any public use, publication, sale or offer for sale of a product to get the patent on file in the US. If that year has run, there is nothing anyone can do to get you a patent_**. (Emphasis added.)

Cornelius Depo. 141:5-18, 142:14-143:8, Depo. Exhibit 14; Haynes Depo. 64:5-13, Depo. Exhibit 14; Plaintiff's Response to Defendant Lott & Friedland, P.A.'s Request for Admissions to Plaintiff, Nos. 7 and 8 (Exhibit C).

6.      Prior to retaining L&F, Haynes and Cornelius were already aware that no patent could be obtained for an invention that was on sale for more than one year before the application was filed. Cornelius Depo. 140:5-10; Haynes Depo. 63:7-17, 64:2-4.

7.      On August 6, 2007, Haynes sent Keller an email requesting an estimate to file a utility patent for a shaker cup ("Shaker Cup") which Creative claimed to have invented.  Haynes Depo. 70:19-22, Depo. Exhibit 54.  Creative had already prepared a draft of the patent which was attached to the email. Haynes Depo. 68:24, 69:2-4, 9-16, Depo. Exhibit 54; Michael Keller Deposition, October 16, 2013 ("Keller Depo"), at 63:16-25, Depo. Exhibit 54 (Exhibit D, including relevant deposition exhibits).

8.      On August 9, 2007, Keller responded with an estimate to file the application. Cornelius Depo. 147:11-19, Depo. Exhibit 15; Keller Depo. 124:3-12, Depo. Exhibit 15.  Neither Haynes nor Cornelius responded to Keller's email until September 4, 2007, when Creative decided to retain L&F to file the utility patent application for the Shaker Cup.  Cornelius Depo. 149:15-21, 152:8-13, Depo. Exhibit 16; Keller Depo. 125:3-10, Depo. Exhibit 52.

9.      Both parties admit that Creative retained L&F to file the utility patent on September 4, 2007.  [DE 1-1], ¶ 19; [DE 92], ¶ 19.

10.     As has been discovered during the course of this case and is set forth in detail below, at the time Creative first retained L&F to file the utility patent application, Shaker Cups using the technology that Creative sought to patent had already been "on sale in this country,

more than one year." 35 U.S.C.A. § 102 (b) (version in effect prior to 2011). When Creative retained L&F, neither Haynes nor Cornelius told Keller that the Shaker Cup was already on sale at all.  See Plaintiff's Supplemental Response to Defendant Lott & Friedland, P.A.'s First Set of Interrogatories, No. 5 (Exhibit E).

11.    Approximately eighteen months before contacting L&F about filing the Shaker Cup application, Creative had provided a prototype of the Shaker Cup it had designed to SI03, Inc.[1] for the purpose of marketing the Shaker Cup. Cornelius Depo. at, 81:14-20; Jeff Fanger Deposition, October 10, 2013 ("Fanger Depo"), at 35:13-15 (Exhibit F, including relevant deposition exhibits).

12.    Three weeks before the discovery cut-off in this case and the night before the deposition of SI03's corporate representative, Jeff Fanger, Creative's counsel, who also happens to be SI03's counsel, delivered to L&F's counsel five pages of email communications ("Bodybuilding.com Emails") between Jeff Fanger, president of SI03, and Jeremy DeLuca of Bodybuilding.com dated between March 6, 2006 and May 26, 2006, eighteen months before L&F was retained to file the utility patent application for the Shaker Cup. [DE 96-2]; Fanger Depo. at 56:9-25, Depo. Exhibit 2.

---

[1] SI03 is a company located in Cape Girardeau, Missouri, near Creative's offices. According to Cornelius, SI03 is merely a customer of Creative's but was acting as agent for Creative in connection with what Creative claims is the first sale. Cornelius Depo. at 115:5-12, 122:25-123:6.  Although Cornelius, who appeared as Creative's corporate representative, claims to be no more than a consultant for both SI03 and Creative, *id.* at 32:15-17, the evidence clearly shows that he established and controls both companies.  SI03 and Creative are each ostensibly owned by foreign corporations that have little or no involvement in their operations. Fanger Depo at 13:5-18, 15:22-16:20; Haynes Depo. at 11:22-12:2, 8-10.  Creative is and has at all material times been owned by Sterling International Enterprises, LLC. ("Sterling International") [DE 31]. SI03 is owned by Pegasus Enterprises, a Turks and Caicos corporation. Fanger Depo. at 13:5-6. Sterling International is owned by Cornelius' mother-in-law, Madea Guadalupe Becerra, and Pegasus Enterprises is owned by someone who appears to be related to Madea Guadalupe Becerra by the name of Yvonne Becerra. Haynes Depo. at 12:11-14; Fanger Depo. at 13:15-18. When asked at his deposition in this case who Sterling International was, Cornelius claimed to not know much about it. Cornelius Depo. at 41:24-42:14, 50:22-51:7, 57:4-22.  He also claimed to not know who owned SI03. *Id.* at 50:22-51:7.  Haynes, who was the President of Creative between 2001 and June 30, 2009, testified that he was hired by Cornelius to start and run Creative. Haynes Depo. at 13:11-14.  Cornelius also owns a company called Idyllic Enterprises, which sublets space to SI03 and does all the bookkeeping and other office services for SI03. Cornelius Depo. at 21:21-23:16, 25:1-7.

3

13.     In the very first email dated March 6, 2006, Fanger told DeLuca: "We've recently found a new Shaker cup company who's [sic] producing a shaker cup that doesn't leak." [DE 96-2; 1]; Fanger Depo. at Depo. Exhibit 2.[2]  DeLuca's email response on March 15, 2006, was clearly an order of 10,000 units of the Shaker Cup: "We would be will[ing] to try 10K with you guys." *Id.* at 4. On April 4, 2006, Fanger confirmed that BodyBuilding.com had ordered 10,000 and tried to get DeLuca to increase the order: "We're still a way out from receiving them [the Shaker Cups] but if we could ***increase your order*** to 15 or 20,000, would this help?" *Id.* at 5. (Emphasis added).  On May 26, 2006, Fanger again wrote to DeLuca:

> I have a question regarding the shaker cups. We have been told that the cups will arrive in about 6 weeks. My concern is that if we get ***the 10,000 cups you ordered*** and then re-order, it will take about 8 - 10 weeks to get more, putting a 2 1/2 month gap between these shipments. On the other hand, we could bump you up to 20,000 on this order and then put in a monthly commitment of whatever you need. In this way there would be no transition period (other than possibly a small one between shipment #1 and #2).

*Id.* at 6 (Emphasis Added).  DeLuca responded: "I have a decent amount of shakers in stock right now so lets [sic] do this run at the 10K to start." *Id.*

14.     The Bodybuilding.com Emails show that in March 2006, SI03 offered to sell a leak-proof Shaker Cup known as the "Sonic Shaker" to Bodybuilding.com, and Bodybuilding.com ordered 10,000 units of the Shaker Cup.

15.     Notwithstanding that the BodyBuilding.com Emails conclusively establish otherwise, both Fanger and Cornelius claimed during their depositions that BodyBuilding.com never ordered any Shaker Cups in March, April or May 2006.  Fanger Depo. at 61:19-62:6, 67:12-68:23; Cornelius Depo. at 75:15-76:4.  Fanger testified that after provided the first prototype of the Shaker Cup to DeLuca, he discovered that it leaked and Cornelius then redesigned the seal with a new sealing technology which is the technology for which Creative retained L&F to file the utility application on September 4, 2007.  Fanger Depo. at 36:11-17.3.

---

[2] Fanger admitted that the company he was referring to was Creative.  Fanger Depo. at 58:22-59:1, 59:11-15.

[3] Cornelius testified that he knew immediately after receiving the prototype that it leaked and that he advised Fanger before giving him the prototype that it leaked.  Cornelius Depo. at 71:12-72:15, 72:23-73:1, 73:6-17.

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

Cornelius testified that he started working on the redesign of the seal of the Shaker Cup by mid-March 2006 and by May 2006 the redesign of the seal for the Shaker Cup "would have been finished, or it would have been well in the process of being developed." Cornelius Depo., at 94:6-13, 95:5-13.[4]

16.     Once the design was complete, using an unidentified hotmail account rather than his Creative email account, Cornelius claims to have emailed the new design, including drawings, with instruction to prepare a prototype to Qingdao Delta Children Products Co. Ltd. ("Delta Children Products"), the manufacturer located in China.[5]   [DE116-20], ¶ 3.   Cornelius claimed to have received the new prototype back "in the June to July time frame of 2006," and having been satisfied with the new prototype, placed an order for 50,000 units on behalf of SI03 within one or two weeks thereafter.   Cornelius Depo. at 97:21-24, 100:14-16, 101:1-5, 15-20, 102:8-13.   Cornelius testified that the new prototype looked identical to the first prototype. Cornelius Depo. at 87:2-7.

17.     Fanger testified that Delta Children Products required payment in full before it would manufacture the Shaker Cups and that SI03 made the payment simultaneously with Cornelius' order.  Fanger Depo. at 100:24-101:2, 101:11-22.

18.     On October 30, 2013, the date of the discovery cut-off, Creative produced, in response to L&F's April 1, 2013 Request for Production, shipping documents for a shipment of 50,000 Shaker Cups from Delta Children Products to Creative.  Shipping Documents [DE 116-22]; [DE 116], p. 11; [DE 116-23].  According to Creative, the shipping documents represent the first order of the perfected Shaker Cup and was the order Cornelius placed on behalf of SI03. [DE 116], p.11.  Delta Children Products shipped 50,000 units of the Shaker Cup from Tsingtao, Quingdao, China, which arrived in Los Angeles, California, on August 17, 2006, and St. Louis, Missouri, on August 25, 2006 and were delivered to SI03's warehouse.  [DE 116], p. 11-12; [DE 116-22].  The shipping documents show that Creative paid for the shipment on August 30, 2006. [DE 116- 22].

---

[4] Creative has never provided any explanation as to why Fanger and DeLuca continued to communicate between March and May 2006 regarding BodyBuilding.com's order of 10,000 Shaker Cups without a single mention of the fact that the prototype provided to DeLuca in March 2006 leaked and was being redesigned.

[5] Delta Children Products is the same company that made the earlier prototypes. Cornelius Depo. at 101:21-102:4.

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

19.     Creative claims that Fanger met with DeLuca's father in early October 2006 at the a bodybuilding trade event, the Olympia Expo, showed him samples of the new Shaker Cup, and later that week DeLuca ordered 10,000 units.  Fanger Depo. 70:5-9, 17-18, 22-25.  SI03 invoiced the 10,000 units in two separate invoices dated October 9, 2006 ("SI03 Invoices").  Fanger Depo. at 73:12-16, 74:2-7, Depo. Exhibit 3.   Creative claims that the October 9, 2006 sale to Bodybuilding.com was the first sale of the Shaker Cups in this country and that October 9, 2007, one year from that date, was the bar date for the utility application for the Shaker Cup.  [DE 1-1], ¶¶ 16, 27; Exh. E, Interrogatory No. 4.

20.     Notwithstanding L&F's pertinent discovery requests, Creative never produced a single document related to: (1) Cornelius' invention of the Shaker Cup; (2) Cornelius' communications with the Chinese factory regarding the design or manufacture of the Shaker Cup including the instructions on how to implement his "invention;" (3) the manufacture of any prototypes of the Shaker Cup; (3) the delivery of the prototypes of the Shaker Cups Cornelius claims to have received in March 2006 and June/July 2006; (4) Cornelius' ordering of the 50,000 Shaker Cups, 10,000 of which were allegedly sold to BodyBuilding.com pursuant to the SI03 Invoices dated October 9, 2006; or (5) Fanger's dealings with Bodybuilding.com in October 2006.  Creative claims to have lost all the emails in Cornelius' unidentified Hotmail account and to have none of the other documents on its servers.  [DE 116-20], ¶¶ 4, 8; [DE 116], p. 11; Cornelius Depo. at 66:13-67:10.

21.     In summary, accepting the timeframes in the sworn testimony of Cornelius and Fanger, the order was placed by SI03 (through Cornelius) with the Chinese factory no later than early August 2006, paid for by SI03 no later than early August 2006, shipped from China on August 5, 2006, and arrived in St. Louis, Missouri, no later than August 25, 2006.

22.     By the time Creative retained L&F on September 4, 2007, more than one year had passed since the time (1) Cornelius placed the order for the 50,000 Shaker Cups with Delta Children Products for resale in the United States; (2) SI03 paid Delta Children Products for the order; (3) Delta Children Products manufactured the 50,000 Shaker Cups; (4) Delta Children Products shipped the 50,000 Shaker Cups; (4) the shipment arrived in St. Louis, Missouri; and (5) Creative paid the shipping company for the shipment.

23.     When Creative retained L&F on September 4, 2007, neither Haynes nor Cornelius mentioned anything to Keller about the 50,000 units or any other fact concerning Creative's sales and marketing of the Shaker Cup.  Exh. E, No. 5.

24.     Between September and October 30, 2007, L&F worked on the patent application and sent it to Creative for its input.  Throughout October 2007, L&F worked with Cornelius and Haynes on a regular basis to finalize the patent.  See L&F Emails (Exhibit G).

25.     Around early October 2007, the decision was made that L&F would also file a design patent application for the Shaker Cup.  Cornelius Depo. at 165:9-166:7.

26.     As late as October 24, 2007, Cornelius and Haynes were providing information to Keller needed to finalize and file the patent applications. Exh. G.

27.     At no time did either Cornelius or Haynes advise L&F of the precise first sale date or claim that the deadline for filing the patent applications (one year from the first sale date) had passed.  Exh. E, No. 5.

28.     In early October 2007, Cornelius became concerned that a company called the Source was selling a product which violated the potential patent Creative hoped to file and requested that L&F send a cease and desist letter to the Source.  Exh. G.  It was only then that Cornelius told Keller that Creative was already selling the Shaker Cup.  Cornelius Depo. at 167:18-24, Depo. Exhibit 21; Exh. G.  On October 3, 2007, Cornelius sent an email to Keller, copied on Haynes, advising: "This shaker cup has been marketed over the last 8 months or so." *Id.*

29.     On October 30, 2007, L&F filed the utility and design patent applications with the U.S. Patent and Trademark Office ("USPTO").  [DE 1-1], ¶28; Keller Depo. at 99:20-100:1; Cornelius Depo. at 177:23-178:4, Depo. Exhibit 27.

30.     Also on October 30, 2007, Keller sent a letter to Cornelius and Haynes enclosing "copies of the utility and design patent applications that [they] filed with the U.S. Patent and Trademark Office on October 30, 2007 via the Express Mail method." Cornelius Depo. at 177:23-178:6, Depo. Exhibit 27.

31.     On December 10, 2007, Keller sent a letter to Cornelius and Haynes enclosing "a copy of the official filing receipt that we have received from the United States Patent and Trademark Office, confirming October 30, 2007 as the filing date for the above-referenced design patent application."  Cornelius Depo. at 180:19-25, Depo. Exhibit 29.

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

32.     Soon thereafter, disagreements arose between L&F and Creative primarily regarding Creative's failure to pay its attorneys' fees bills.  [DE 87], p. 3.  L&F withdrew as counsel for Creative. [DE 87], p. 3.

33.     On December 23, 2008, the USPTO patent examiner assigned to the Shaker Cup utility application rejected the utility patent as unpatentable because of prior existing patents filed by others.  Cornelius Depo. at 204:18-205:10, Depo. Exhibit 31; Certified Copy of USPTO Shaker Cup Patent Application File, pp. 37-47 (Exhibit H).

34.     Through its new counsel, Matthew Rosenberg, Esq., on or about June 23, 2009, Creative responded to the rejection.  Exh. H, p.56-58; Cornelius Depo. at 205:11-23, Depo. Exhibit 31.  On October 15, 2009, the USPTO rejected Creative's arguments and again found that the Shaker Cup was rejected as unpatentable because of prior existing patents filed by others. Exh. H, pp. 64-69; Cornelius Depo. at 207:4-8, Depo. Exhibit 31.  Rosenberg requested a telephone interview, which was held on November 9, 2009.  Exh. H, 71-75; Cornelius Depo. at Depo. Exhibit 31.  After the interview, the examiner again rejected the patent utility application on the grounds that the Shaker Cup was unpatentable based on existing patents.  *Id.*

35.     Creative failed to take any further action with the USPTO and on May 12, 2010, the USPTO issued a Notice of Abandonment deeming Creative to have abandoned the application.[6] Exh. H, pp. 76-77.

36.     On December 2, 2009, L&F filed suit against Creative in Miami-Dade County Circuit Court seeking to recover its unpaid legal fees. Cornelius Depo. at 201:24-202:1; [DE 110], p. 3.

37.     On December 22, 2009, Creative filed suit in Missouri State Court claiming that L&F committed malpractice by failing to file the Shaker Cup patents within one year of its first sale date.  [DE 1-1]; Cornelius Depo. at Depo. Exhibit 8.  The Petition includes two counts, one for legal malpractice and one for breach of fiduciary duty.  [DE 1-1]; Cornelius Depo. at Depo. Exhibit 8.  In the Petition, Creative claimed for the first time that the first sale date of the Shaker

---

[6]  On November 7, 2008, the USPTO patent examiner assigned to the Shaker Cup design application rejected the design patent application allegedly because the drawings were incorrect. Cornelius Depo. at 222:2-14, Depo. Exhibit 33.  Creative failed to take any further action with the USPTO and on June 25, 2009, the USPTO issued a Notice of Abandonment as to the design patent application, deeming Creative to have abandoned the application.  Cornelius Depo. at 223:21-23, 224:3-14, Depo. Exhibit 33.

Cup was October 9, 2006.  [DE 1-1]; Cornelius Depo. at Depo. Exhibit 8.  The case was removed to the United States District Court for the Eastern District of Missouri. [DE 1].

38.     On May 10, 2011, the parties filed a Joint Motion to Transfer the case to this district, pursuant to 28 U.S.C. § 1404(a).  [DE 45].  On May 13, 2011, the United States District Court for the Eastern District of Missouri granted the Joint Motion to Transfer, and the case was transferred to this Court. [DE 46].

39.     All of the work done by L&F was performed in Florida.  Declaration of Ury Fischer, ¶ 6 (Exhibit I).

40.     No employee of L&F ever visited Creative in Missouri or undertook any legal work in Missouri.  Exh. I, ¶¶ 6, 8.

KELLER LANDSBERG PA
Broward Financial Centre
500 East Broward Boulevard, Suite 1400
Fort Lauderdale, Florida  33394
Telephone: (954) 761-3550
Facsimile: (954) 525-2134
Email: david.keller@kellerlandsberg.com
Email: raymond.robin@kellerlandsberg.com

By: */s/Raymond L. Robin*
D. David Keller
FBN:  288799
Raymond L. Robin
FBN:  613835
*Attorneys for Defendant Lott & Friedland, P.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed and served electronically via CM/ECF on April 22, 2014 on all counsel of record on the Service List below.

*/s/ Raymond Robin*
Raymond L. Robin
Florida Bar Number 613835

## SERVICE LIST

**Christopher Mark David**
Fuerst Ittleman David & Joseph, P.L.
1001 Brickell Bay Drive, 32nd Floor
Miami, Florida
Phone:  786-364-7990
Fax:  786-364-7995
Email:   cdavid@fuerstlaw.com
*Attorneys for Plaintiff*

**Thomas J. DeGroot**
Law Offices of Thomas DeGroot, LLC
32 S. Elm Avenue
St. Louis, MO 63119
(314) 824-8032
Phone: 314-449-6616
Fax: 314-621-7607
Email: tom@degrootlaw.net
*Attorneys for Plaintiff*