UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:11-21879-CIV-MGC/Torres

CREATIVE COMPOUNDS, LLC,

    Plaintiff,

v.

LOTT & FRIEDLAND, P.A.,

    Defendant.

_____/

## DEFENDANT LOTT & FRIEDLAND, P.A.'S MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

    Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the United States District Court for the Southern District of Florida, Defendant Lott & Friedland, P.A. ("L&F") moves for summary judgment as to the Petition for Damages ("Petition") [DE 1-1] filed by Plaintiff Creative Compounds, LLC, ("Creative").  There is no genuine dispute as to any material fact and L&F is entitled to judgment as a matter of law.

**I.     INTRODUCTION**

    Creative sued L&F for legal malpractice and breach of fiduciary duty for failing to file a patent application for a Shaker Cup within one year of the date on which Creative first sold the Shaker Cup.  Because the undisputed material facts conclusively establish that the bar date for filing a patent application for the Shaker Cup passed before Creative retained L&F to file the application, regardless of what action it took or allegedly failed to take, L&F could not as a matter of law be the proximate cause of any damages allegedly suffered by Creative.  Further, Creative failed to file this case within two years of the date on which Creative knew or should have known that it had a claim against L&F.  Creative's claims are therefore also barred by Florida's statute of limitations.

**II.    UNDISPUTED FACTS**

    Pursuant to Local Rule 56.1(a), L&F has contemporaneously filed its statement of undisputed material facts, each of which is established by competent record evidence.

### III. ARGUMENT

#### A. Applicable Summary Judgment Legal Standard

As the United States Supreme Court has made clear, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed.R.Civ.P. 1). Federal Rule of Civil Procedure 56(a), provides in pertinent part that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

*Id.* This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact . . . and the moving party is entitled to a judgment as a matter of law.'" *Holder v. Nicholson*, 287 Fed. Appx. 784, 790 (11th Cir. 2008) (citations omitted). Further, "the existence of some nonmaterial factual dispute is insufficient to survive a motion for summary judgment." *Id.* (citation omitted). "For a factual dispute to be considered 'material,' there must be 'sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Id.* at 1023. As set forth below, there is no genuine issue regarding any material fact as to the dispositive issues raised in this Motion and L&F is entitled to judgment in its favor as a matter of law.

#### B. L&F's Alleged Negligence Is Not The Proximate Cause Of Any Loss Allegedly Suffered By Creative.

##### 1. Standard For Establishing The "On Sale" Bar Date Pursuant to Section 102(b)

Section 102(b) of Title 35 U.S.C., entitled "Conditions for patentability; novelty and loss of right to patent," in effect prior to 2011 and therefore controlling in this case, stated:

> A person shall be entitled to a patent unless—

* * *

>   (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or *on sale in this country*, more than one year prior to the date of the application for patent in the United States ….

35 U.S.C. § 102(b) (Emphasis added).  Based on Section 102(b), an invention cannot be patented unless the patent application is filed within one year of the "on sale" bar date.  The United States Supreme Court has held that the "on sale" bar occurs when two conditions are met: (1) The product is the subject of a commercial offer for sale; and (2) The invention is ready for patenting. *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 56 (1998).

The issue of whether a patent application was timely filed is a question of law based on underlying facts.  *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002).  Generally the standard for invalidating a patent issued by the United States Patent and Trademark Office ("USPTO") lies with the challenger of the patent, whose proof must be clear and convincing. *Id.*  This is because an issued patent is presumed by law to be valid and that validity can only be overcome by clear and convincing evidence. 35 U.S.C. § 282; *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 13 CIV. 3599 DLC, 2013 WL 6164341 (S.D.N.Y. 2013).  In this case not only is there no issued patent but the USPTO expressly rejected the utility patent application three times concluding each time that the Shaker Cup was unpatentable based on prior art.

In a legal malpractice case, the plaintiff bears the burden of proving, "1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." *Law Office of David J. Stern, P.A. v. Security Nat'l Serv. Corp.*, 969 So. 2d 962, 966 (Fla. 2007).  Creative bears the burden of proving that but for the alleged actions of L&F, the USPTO would have issued a utility patent on the Shaker Cup.  Because the decisions of the USPTO are presumptively correct, the burden is on Creative to establish by clear and convincing evidence that a patent would have issued notwithstanding that it rejected it three times. *Cf. Louis A. Grant, Inc. v. Keibler Indus., Inc.*, 377 F. Supp. 1069, 1082 (N.D. Ind. 1973) ("[S]everal defects in the prosecution of the patent application weaken the normal presumption because they resulted in omissions and inaccuracies in the materials presented to the patent office.")

Because the Shaker Cup was the subject of commercial offers for sale and was ready for patenting well before September 4, 2006 — more than one year before Creative retained L&F to file the patent application — the patent on the Shaker Cup was time barred before Creative retained L&F and L&F could not, as a matter of law, be the proximate cause of any damages suffered by Creative.

> **2.   By The Time Creative Retained L&F To File The Utility Patent Application, The Patent Was Already Time Barred.**
>
> > **a.   The 50,000 Shaker Cups Sold By Qingdao Delta Children Products Co. Ltd. to Creative**
> >
> > > **i.   The First *Pfaff* Prong**

As recently as 2013, the Federal Circuit Court of Appeals confirmed the well-settled principal that in determining what constitutes an "on sale" bar, there is no exception for sales made by a supplier of the product to the inventor. *See Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, 726 F.3d 1370, 1375 (Fed. Cir. 2013) ("[T]here is no 'supplier exception' to the on-sale bar. Thus, it is of no consequence that the 'commercial offer for sale' at issue in this case was made by Hamilton Beach's own supplier and was made to Hamilton Beach itself.") (citations omitted.); *see also Special Devices, Inc. v. OEA, Inc.*, 270 F.3d 1353, 1355 (Fed. Cir. 2001) (sales of invention made by manufacturer to inventor for resale are commercial offers for sale to be considered in connection to the bar date under 35 USC § 102(b)).  As the Federal Circuit Court of Appeals explained in *Special Devices, Inc.*:

> By phrasing the statutory bar in the passive voice, Congress indicated that it does not matter who places the invention "on sale"; it only matters that someone—inventor, supplier or other third party—placed it on sale.

*Special Devices, Inc.*, 270 F.3d at 1355.

There is no dispute that: (1) Cornelius placed an order for 50,000 units of the final version of the Shaker Cup with the Chinese manufacturer, Qingdao Delta Children Products Co. Ltd. ("Delta Children Products"), no later than early August 2006; (2) SI03 paid for the order at or around that same time; (3) The 50,000 Shaker Cups were for the purpose of resale; (3) Delta Children Products agreed to and did manufacture the 50,000 Shaker Cups; (4) the 50,000 Shaker Cups were shipped from China to the United Sates leaving China on August 5, 2006; (5) The

50,000 Shaker Cups arrived in St. Louis, Missouri, on August 25, 2006; and (6) Creative retained L&F to file the patent application on September 4, 2007.[1]

The first prong of *Pfaff* does not require a completed transaction; simply an offer to sell which if accepted would amount to a contract. It is impossible to tell precisely when the offer was made because Creative claims to have lost all of the documents and communications related to the transaction. However, since the order of 50,000 Shaker Cups was complete and shipped no later than August 5, 2006, the first offer of sale necessarily occurred on or prior to that date,[2] more than one year before Creative retained L&F to file the application.[3]

> ii. **The 50,000 Shaker Cups Sold By Qingdao Delta Children Products Co. Ltd. to Creative Satisfied The "On Sale In This Country" Requirement Of Section 102(b)**

Courts have been extremely liberal in interpreting the "on sale in this country" requirement of Section 102(b) and have universally held that a product sold by a foreign manufacturer to a customer in the United States is "on sale in this country" for purposes of Section 102(b). *See*, *e.g., Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, 726 F.3d

---

[1] Other than the shipping records which Creative states represent the purchase of the first 50,000 units of the final version of the Shaker Cup, Creative claims to not have any other document related to the order placed with Delta Children Products. Most of the dates set out in this paragraph come from the sworn testimony of Cornelius and Fanger. Other testimony given by Cornelius, together with the shipping documents, tends to show that the dates of the events were in fact earlier. For example, Cornelius testified that an order of 50,000 would take "three weeks or so." If that were the case (and Fanger told DeLuca that an order took eight to ten weeks), then the order was more likely placed with Delta Children Products in mid-July 2006 rather than August 2006 because the shipping documents clearly show that they were shipped on August 5, 2006. Regardless of when the order was placed, it was shipped on August 5, 2006. None of this matters, however, because the order had to pre-date the shipment, which occurred thirteen months before Creative retained L&F to file the patent application for the Shaker Cup.

[2] The existence of a sales contract "makes it clear that such an offer had been made." *Pfaff*, 525 U.S. at 56.

[3] Although Cornelius is careful in his declaration filed with the Court opposing L&F's Motion for Sanctions to avoid providing the dates on which he placed the order for the 50,000 Shaker Cups, he claims in the declaration that Creative took title to the Shaker Cups in China. Since the shipping documents show that the Shaker Cups left China on August 5, 2006, that shows that the entire transaction was complete by then. The offer to sell certainly occurred therefore before August 5, 2006.

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

1370, 1375 (Fed. Cir. 2013) (United States inventor's order of units of the invention from foreign manufacturer satisfied the "on sale in this country" requirement of Section 102(b)); *In re Caveney*, 761 F.2d 671, 677 (Fed. Cir. 1985) ("Although [manufacturer] presumably made its offer from England, that offer was directed to [buyer] at its place of business in the United States. Therefore, 35 U.S.C. § 102(b) is applicable to the facts of this case."); *Link Treasure Ltd. v. Baby Trend, Inc.*, 809 F. Supp. 2d 1191, 1201 (C.D. Cal. 2011) ("The facts of *Caveney* are similar to the facts here; both cases involve the sale of a claimed invention by a foreign manufacturer to an American company's place of business in the United States, and thus the on-sale bar likewise applies to Lerado's sale of the T–415 Strollers to Defendant.").

   In ruling on whether a sale is deemed to be in this country, Courts have gone so far as to hold that as long as "substantial activity prefatory to a sale occurs in the United States" even the sale of an invention to a foreign buyer satisfies the "on sale in this country" requirement of Section 102(b). *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 434 (9th Cir. 1973); *see also Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd.*, C 04-2000CW, 2007 WL 3231709 (N.D. Cal. 2007) *aff'd,* 558 F.3d 1341 (Fed. Cir. 2009) ("While MPS's actual offer to sell the MP1010 chip to Ambit took place in Taiwan, it cannot be considered in a vacuum. The arrangements for MPS's sales trip were made from its United States offices, and MPS communicated from the United States with Ambit about the sale. The products were also made in and shipped from this country. … The Court finds that sufficient activity prefatory to the sale occurred in the United States to satisfy the first prong of the *Pfaff* test.").

   There is no dispute that Creative purchased 50,000 units of the Shaker Cup from Delta Children Products for resale in the United States and that Delta Children Products shipped the Shaker Cups to Creative or SI03, allegedly acting as Creative's agent in Missouri. Based on almost identical facts — the sale from a foreign manufacturer to a United States inventor of the invention for resale — the Federal Circuit Court of Appeals held that such a sale satisfied the "on sale in this country" requirement of the same version of Section 102(b) of Title 35, which controls this case. *See Hamilton Beach Brands, Inc.*, 726 F.3d at 1370, 1375. The first prong of the *Pfaff* test was satisfied more than one year before Creative retained L&F.

6
Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

### iii. The Shaker Cup Was Ready For Patenting Before Creative Retained L&F.

The second prong of the *Pfaff* test can be satisfied in two ways: "[B]y proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff*, 525 U.S. at 67-68. Under either test the Shaker Cup was ready for patenting more than one year before Creative retained L&F to file the patent application on the Shaker Cup. First, Cornelius testified that he sent final specifications and drawings of his invention to Delta Children Products in or around late May 2006. Those drawings were sufficient for Delta Children Products to manufacture a prototype that embodied the invention. Second, Cornelius received the prototype embodying the invention back from Delta Children Products in June or July 2006. Cornelius testified that he was satisfied with the prototype. Both events satisfy the second prong of *Pfaff* test and occurred more than a year before Creative retained L&F to file the patent application.

### iv. L&F Was Not The Proximate Cause Of Any Injury To Creative

There is no genuine dispute that the first sale date of the Shaker Cup occurred no later than early August 2006 and that the Shaker Cup was ready for patenting no later than July 2006. Accordingly, the last date on which a patent application could validly be filed for the Shaker Cup was no later than early August 2007. There is also no genuine dispute that Creative retained L&F to file the patent application for the Shaker Cup on September 4, 2007, more than one year after the critical date. Regardless of anything it did, L&F could not possibly have filed a timely patent application for the Shaker Cup by the time it was hired to do so. Based on the foregoing, L&F is not, as a matter of law, the proximate cause of any damage allegedly suffered by Creative. Accordingly, L&F is entitled to Final Summary Judgment on all claims asserted in Creation's Petition.

### b. The Bodybuilding.com Sale Also Satisfies *Pfaff*

To satisfy the first prong of the *Pfaff* test, it is not necessary that there be an actual sale of the invention; it is sufficient that the invention is the subject of a commercial offer for sale. *Pfaff*, 525 U.S. at 67. To qualify as an offer sufficient to amount to an on sale bar, the offer must be

such that the offeree could establish a contract by simple acceptance. *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008) ("To meet the first, commercial offer, prong, the offer must be sufficiently definite that another party could make a binding contract by simple acceptance, assuming consideration."); *Orbis Corp. v. Rehrig Pac. Co.*, 12-CV-1073-JPS, 2013 WL 4829299 (E.D. Wis. 2013) (finding that presentations to a company constituted an offer since, "[w]ithout a doubt, Norseman must have known going into either presentation that, if Earthgrains was happy with the proposed price and product, they could immediately accept the price and design on offer"); *Honeywell Int'l Inc. v. Nikon Corp.*, 672 F. Supp. 2d 638, 644 (D. Del. 2009) *aff'd*, 400 Fed. Appx. 557 (Fed. Cir. 2010) (finding that a proposal constituted an offer based on the language and terms of the proposal, irrespective of whether further negotiations might arise or be expected). "[T]he rule is that an invention is deemed functional for public use purposes when it can perform the general function for which it has been developed, even though the device might later be refined." *Atlas v. E. Air Lines, Inc.*, 311 F.2d 156, 162 (1st Cir. 1962); *Nordberg Inc. v. Telsmith, Inc.*, 881 F. Supp. 1252, 1285 (E.D. Wis. 1995) *aff'd*, 82 F.3d 394 (Fed. Cir. 1996).

The plain language of the email communications between Jeff Fanger of SI03 and Jeremy DeLuca of Bodybuilding.com between March and May 2006 establish not only that the Shaker Cup was offered for sale to Bodybuilding.com, but also that the parties had entered into a contract for the sale of 10,000 Shaker Cups by March 2006. Regardless of what happened after that or whether the contract reached in the emails was actually consummated, there can be no dispute that the Shaker Cup was offered for sale by Fanger in the BodyBuilding.com Emails.

Fanger offered to sell "a shaker cup that doesn't leak …. [,] a thicker walled cup and a really cool looking clear cobalt blue lid." Both Fanger and Cornelius testified that the Shaker Cup discussed in the BodyBuilding.com Emails, a sample of which was provided to DeLuca in March 2006, looked identical to the final version of the Shaker Cup allegedly perfected in May or early June 2006.[4] Based on these email exchanges, there is no question that the Shaker Cup

---

[4] Creative originally included claims against L&F based on the design patent application but appears to have abandoned them. Since the design of the Shaker Cup was disclosed to BodyBuilding.com by Fanger and offered for sale in March 2006 and that design never changed, the undisputed facts show that L&F was not retained to file the design patent application until eighteen months after the bar date. To the extent that Creative continues to pursue any claims

was the subject of a commercial offer for sale and that there was a contract for the sale of the Shaker Cup to BodyBuilding.com before September 4, 2006.

Relying on the testimony of Fanger and Cornelius, Creative claims that there was no offer to sell or agreement to buy the Shaker Cup between March and May 2006 and that the Shaker Cup prototype delivered to DeLuca in March 2006 had to be modified to fix a leaking problem with the seal. Creative has claimed in previous filings with the Court that Fanger and Cornelius' testimony is uncontradicted but that is not true. Their testimony is contradicted by the BodyBuilding.com Emails sent between March and May 2006 which at a minimum plainly show: (1) an offer and acceptance as early as March 2006; and (2) as late as May 26, 2006, the complete absence of any mention in the BodyBuilding.com Emails of any alleged leakage or redesign of the Shaker Cup while Fanger attempted to "bump [BodyBuilding.com's 10,000 unit order] up to 20,000" and told DeLuca that delivery of the first order placed by BodyBuilding.com was expected to "arrive in about 6 weeks."[5]

The Federal Circuit Court of Appeals has held that a patent holders' testimony contradicting a document clearly establishing an offer and, in fact, a sale of an invention prior to the critical period is insufficient to create a material issue of fact precluding summary judgment. *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1370 (Fed. Cir. 2007) (summary judgment upheld against patent holder based on "first offer of sale" date notwithstanding patent holder's sworn declaration claiming that a letter evidencing order was not in fact an order — "[Patent holder]'s *post hoc* effort to say [buyer] did not intend what is abundantly plain from the price,

---

based on the design patent application, L&F is entitled to Final Summary Judgment on those claims as well.

[5] On May 26, 2006, Fanger wrote to DeLuca:

> I have a question regarding the shaker cups. We have been told that the cups will arrive in about 6 weeks. My concern is that if we get **the 10,000 cups you ordered** and then re-order, it will take about 8 - 10 weeks to get more, putting a 2 1/2 month gap between these shipments. On the other hand, we could bump you up to 20,000 on this order and then put in a monthly commitment of whatever you need. In this way there would be no transition period (other than possibly a small one between shipment #1 and #2).

quantity, and delivery terms on the face of the June 7 letter does not raise a genuine issue of fact.").

Creative's entire story about what happened between March 2006 and October 2006, when it claims to have made the first sale of the Shaker Cups, which is continuously changing, is unsupported by a single document because according to Creative, it lost or never kept any of emails or the underlying documents such as design drawings, instructions or purchase orders. Accepting *arguendo* everything Creative claims occurred between March and May 2006 except the testimony of Fanger and Cornelius which simply contradicts the plain language of the BodyBuilding.com Emails, it is undisputed that: (1) in March 2006, SI03 offered to sell BodyBuilding.com leak-proof Shaker Cups called the Sonic Shaker; (2) SI03 delivered to BodyBuilding.com a sample that looked in all respects identical to what Creative now claims to have been the final Shaker Cup; (3) in March 2006 BodyBuilding.com placed an order with SI03 for 10,000 units of the Shaker Cup; (4) Cornelius had to refine the seal to correct an issue so that it was in fact "leak proof," as offered; (5) by no later than by late May 2006 Cornelius had perfected the seal; and (6) at no time did BodyBuilding.com withdraw its order of 10,000 Shaker Cups. Based on these material undisputed facts, the Shaker Cup was first offered for sale more than one year before Creative retained L&F to file the Shaker Cup patent application.

As set forth above, the Shaker Cup was ready for patenting no later than June/July 2006. Based on these undisputed facts, the critical date was no later than July 2006, fourteen months before Creative retained L&F to file the utility patent application. Accordingly, L&F, cannot as a matter of law, be the proximate cause of any damages allegedly suffered by Creative.

    C.    **Even Accepting That The First Sale Date Was October 9, 2006 As It Asserts, Creative's Claims Are Still Barred Based On The Statute Of Limitations**

        1.    **Missouri's Choice-of-Laws Rules Apply**

Where a case is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court must apply the choice-of-law rules of the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 642 (1964); *Ferens v. John Deere Co.*, 494 U.S. 516, 522 (1990); *see also Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) ("[W]hen a case is transferred from one forum to another, the transferor court's choice-of-law rules apply to the transferred case even after the transfer occurs."). The rule is designed to ensure that the case has the same

outcome as it would have had in the forum where the plaintiff filed it. *Van Dusen*, 376 U.S. at 639 n. 40 ("We are only concerned here with those state laws of the transferor State which would significantly affect the outcome of the case."). Because this case was transferred to this Court pursuant to 28 U.S.C. § 1404(a), the Court is required to follow Missouri's choice-of-laws rules.

        2.        **Following Missouri's Choice-of-Laws Rules, Florida's Statute of Limitations Applies In This Case**

Missouri courts generally consider issues involving the statute of limitations to be procedural and therefore governed by Missouri law. *Wright v. Campbell*, 277 S.W. 3d 771, 773 (Mo. App. 2009). However, Missouri has a "borrowing statute" which provides:

> Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.

§ 516.190, Mo. Stat. Accordingly, where a cause of action originates outside of the state of Missouri, the statute of limitations of the originating state applies. *See Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 620 (Mo. App. 2006) ("When a cause of action 'originates in another state, ... the foreign state's statute of limitations becomes applicable through Missouri's borrowing statute, section 516.190."); *see also Great Plains Trust Co. v. Union Pacific RR Co.*, 492 F.3d. 986 (8th Cir. 2007) (based on Missouri's borrowing statute, breach of contract action barred by Kansas statute of limitation because action originated where payments were to be made and payments were to be made in Kansas).

Missouri Courts have generally held that a cause of action originates for purposes of the borrowing statute "when the damage resulting therefrom 'is sustained and is capable of ascertainment.'" *Ferrellgas, Inc.*, 190 S.W.3d at 620. The "capable of ascertainment" test is an objective one that is usually decided by the Court as a matter of law. *Id.* A cause of action originates "where the sustaining of damage first became capable of ascertainment" and not where the client was physically located when it first learned of the injury. *Id.* at 621. Damage is ascertainable "when the fact of damage can be discovered or made known, not when the plaintiff actually discovers injury or wrongful conduct," regardless of whether the amount of damage is then known. *Id.* at 620. The Supreme Court of Missouri considered the meaning of the term "capable of ascertainment" and stated:

> The issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages. At that point, the damages would be sustained and capable of ascertainment as an objective matter.

*Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 584 (Mo. 2006).

In *Ferrellgas, Inc.*, a Missouri attorney represented a Missouri corporation in defending a personal injury claim in California. The jury entered a verdict against the company for $2 million. Claiming that the attorney failed to advise the company that any finding of liability against the company would subject it to being responsible for the entire judgment, the company sued the attorney for professional negligence in Missouri five years after the verdict. California's statute of limitations was one year while Missouri's was five years. The company argued that the case originated in Missouri because that is where the company first learned of the malpractice. The Court rejected the argument finding that the claim originated in California because that is where the damages became capable of ascertainment and it was "immaterial whether [the company] actually discovered the damage at that place and time." *Id.* at 622.

L&F was located in Florida and was retained to perform legal services for Creative in Florida. All of the work done by L&F was undertaken in Florida. No employee of L&F ever visited Creative in Missouri or undertook any legal work in Missouri.

Creative's principals were fully aware of the one-year time limit after the first sale date for filing an application for a patent before they retained L&F. In addition, Michael J. Keller, Esq., of L&F, advised Creative's principals of that rule before they even approached him about the patent for the Shaker Cup. Finally and most importantly, the first sale date is information that is uniquely within the knowledge of the inventor of a patent. There is no reliable way for an attorney to research the first sale date of a product. The only way for an attorney to know the first sale date for a product for which a client seeks a patent is for the client to disclose that information to the attorney. In other words, assuming that the first sale here was indeed October

9, 2006, as Creative claims, such that the bar-date was October 10, 2007, ***the only party in a position to know that was Creative.***[6]

Based on the undisputed facts, just like in *Ferrellgas, Inc.*, where the damages of a jury verdict rendered in California became objectively ascertainable in California, the alleged damages for L&F's failure to file the applications by October 9, 2007, assuming *arguendo* that was in fact the bar date, became objectively ascertainable in Florida where all of the work related to the patent application and the alleged failure to file the application took place. The issue is not "where the plaintiffs were physically located when they 'learned of' the [events amounting to malpractice], but rather where the sustaining of damage first became capable of ascertainment." *Ferrellgas, Inc.*, 190 S.W.3d at 621.[7]

---

[6] There is no record evidence that Creative ever advised L&F of the first sale date or even raised the issue before filing its Petition in this case. In response to L&F's First Set of Interrogatories asking whether it ever advised L&F of the first sale date prior to filing this action, Creative avoided the question. It was only after the Court entered its Order granting L&F's Motion to Compel [DE 91] that Creative supplemented its interrogatory answer admitting that prior to filing this case, it never advised L&F of the first sale date. In fact, the only evidence of Creative informing L&F about the first sale date before the one year expiration is an email sent on October 3, 2007 (6 days before what Creative now claims was the one year anniversary of the first sale date) by Cornelius to Keller and copied on Haynes advising: "This shaker cup has been marketed over the last 8 months or so." [DE 110-1]. In addition, when L&F informed Creative in the October 30, 2007 letter that it had filed the applications on October 30, there was no protest or communication from Creative that the application filings were untimely although only Creative knew the date of the first sale.

[7] The same Court that decided *Ferrellgas, Inc.* revisited the issue a few years later in *Wright v. Campbell*, 277 S.W. 3d 771 (Mo. App. 2009). In *Wright*, a Missouri client sued her Missouri attorney after he failed to file her personal injury action in Kentucky within the time specified by the Kentucky statute of limitations. The Missouri attorney took no action in Kentucky and the first time the client learned of the malpractice was when the Missouri attorney so advised her in his Missouri office. Upholding its ruling in *Ferrellgas, Inc.*, the *Wright* Court distinguished the case from *Ferrellgas, Inc.* pointing out that a client in the plaintiff's position could not possibly know that it had suffered damages until the attorney advised her of his omission and because that occurred in Missouri, the damages were first capable of ascertainment in Missouri. The *Wright* Court pointed out that in cases such as *Ferrellgas, Inc.* damages become ascertainable where a layperson "could appreciate the adverse impact" of the attorneys' actions the moment they occur. *Wright*, 277 S.W.3d at 776. That is true of the facts in this case where a layperson (armed with the knowledge that the first sale date was October 9, 2006 and that a patent application must be filed within one year) could appreciate that as of October 10, 2007, the time to file the application had expired and it had suffered damages.

13
Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

Because the damages first became ascertainable in Florida, the cause of action originated in Florida and Florida's statute of limitations applies based on Missouri's borrowing statute.

### 3. Creative's Claims Are Time-Barred

Under Florida's statute of limitations, an action for legal malpractice is barred unless it is filed within two years "from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." § 95.11(4)(a), Fla. Stat.  As stated above, Creative was uniquely in a position to know the first sale date of the Shaker Cup.  Creative claims that date was October 9, 2006.  In addition, it is undisputed that Creative was aware that an application to patent a product must be filed within one year of its first sale date or it is forever barred.[8]  On June 1, 2007, Keller clearly advised Creative of the one year deadline in an email sent to Cornelius and Haynes warning:

> Remember you have one year from any public use, publication, sale or offer for sale of a product to get the patent on file in the US.  If that year has run, there is nothing anyone can do to get you a patent.

The undisputed facts establish that no later than early November 2007, Creative knew that the patent application was not filed by L&F until October 30, 2007.  On October 30, 2007, Keller sent a letter to Cornelius and Haynes enclosing "copies of the utility and design patent applications *that we filed with the U.S. Patent and Trademark Office on October 30, 2007* via the Express Mail method." (Emphasis added).[9]  In addition, on December 10, 2007, Keller sent a letter to Cornelius and Haynes enclosing "a copy of the official filing receipt that we have received from the United States Patent and Trademark Office, confirming October 30, 2007 as the filing date for the above-referenced design patent application."[10]

---

[8] In its Supplemental Answer to Interrogatory Number 6, Creative admits: "Creative was generally aware that it had begun selling shaker cups during late fall of 2006. Creative was also aware that, generally, a patent application had to be filed within one year of the first sale of a product, but each patent application was different." Exhibit E.

[9] "[A] letter properly addressed, stamped and mailed is presumed to have been received by the addressee." *Brake v. Unemployment Appeals Comm'n*, 473 So.2d 774, 774 (Fla. 3d DCA 1985).

[10] In addition, there are emails between L&F and Creative between October 9, 2007 and October 30, 2007 discussing issues related to the preparation of the applications for filing which shows

Based on the above, Creative knew or should have known better than anyone else the first sale date of the Shaker cup was October 9, 2006, assuming only for purposes of this argument that that was the first sale date. Creative was clearly advised that if a patent application is not filed within "one year from any public use, publication, sale or offer for sale of [the] product … there is nothing anyone can do to get you a patent." [DE116-5]. Finally, Creative was advised no later than early November 2007 that the applications were not filed on or before October 9, 2007. Based on the foregoing, under Florida's statute of limitations, Creative had until early November 2009 to file this action against L&F. ***But Creative did not file this action until December 22, 2009.*** Creative's action is therefore time-barred and L&F is entitled to judgment as a matter of law.[11]

## IV.  CONCLUSION

Based on the foregoing, Defendant Lott & Friedland, P.A. respectfully requests that the Court grant Final Summary Judgment against Plaintiff Creative Compounds, LLC and such other relief as the Court deems appropriate.

---

that Creative was or should have been aware during that period of time that L&F had not filed the applications by October 9, 2007.

[11] Although Count II of the Petition is for breach of fiduciary duty rather than legal malpractice, because it is based on the same operative facts as the legal malpractice claim, it is also barred by the two-year statute of limitations governing professional malpractice. *See* § 95.11(4)(a), Fla. Stat. ("An action for professional malpractice, other than medical malpractice, ***whether founded on contract or tort*** …") (emphasis added.); *Tambourine Comercio Internacional SA v. Solowsky*, 312 Fed. Appx. 263, 280 (11th Cir. 2009) ("[A] claim styled as one for "breach of fiduciary duty" claim, when brought against a law firm or attorney for actions relating to the attorney-client relationship, is treated as a malpractice claim subject to the two-year statute of limitations."); *see also Ferrellgas, Inc.*, 190 S.W.3d at 622.

KELLER LANDSBERG PA
Broward Financial Centre
500 East Broward Boulevard, Suite 1400
Fort Lauderdale, Florida  33394
Telephone: (954) 761-3550
Facsimile: (954) 525-2134
Email: david.keller@kellerlandsberg.com
Email: raymond.robin@kellerlandsberg.com

By: */s/ Raymond L. Robin*
D. David Keller
FBN:   288799
Raymond L. Robin
FBN:   613835

*Attorneys for Defendant Lott & Friedland, P.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed and served electronically via CM/ECF on the 22nd day of April 2014, on all counsel of record on the Service List below.

*/s/ Raymond Robin*
Raymond L. Robin
Florida Bar Number 613835

## SERVICE LIST

| | |
|---|---|
| Christopher David, Esq. | Thomas J. DeGroot, Esq. |
| Email: cdavid@fuerstlaw.com | Email: tom@degrootlaw.net |
| **Fuerst Ittleman David & Joseph, P.L.** | **Law Offices of Thomas DeGroot, LLC** |
| 1001 Brickell Bay Drive, Suite 2002 | 32 S. Elm Avenue |
| Miami, Florida 33131 | St. Louis, MO 63119 |
| Telephone:   (786) 364-7990 | (314) 824-8032 |
| Facsimile:   (786) 364-7995 | Phone: 314-449-6616 |
| *Attorneys for Plaintiff* | Fax: 314-621-7607 |
|    *Creative Compounds, LLC* | *Attorneys for Plaintiff* |
| |    *Creative Compounds, LLC* |